111 F.3d 133
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
George SIBLEY, Plaintiff-Appellant,
v.
UNITED STATES DEPARTMENT OF EDUCATION, Defendant-Appellee.
 No. 96-1392.
 United States Court of Appeals, Seventh Circuit.
 Submitted April 1, 1997.*
Decided April 1, 1997.
 
 Before POSNER, Chief Judge, and KANNE and DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 George Sibley, an employee of the Internal Revenue Service, defaulted on a federally-insured student loan. The Illinois State Scholarship Commission, and later the defendant United States Department of Education ("Department"), which assumed responsibility for collecting on the loan, unsuccessfully demanded payment. When the Department threatened to offset Sibley's disposable wages by fifteen percent, pursuant to 5 U.S.C. § 5514, Sibley sought to convince the Department that such garnishment would cause him extreme hardship. The Merit Systems Protection Board ("MSPB") ultimately ruled in favor of the Department. Sibley, acting pro se, sued, claiming that the Department had violated his rights under the Fifth, Thirteenth, and Fourteenth Amendments. The district court granted summary judgment to the Department. We affirm.
 
 
 2
 Sibley devotes most of his argument on appeal to claims that the Department violated his due process rights. He makes much of the Department's alleged violations of its own hearing procedures. First, he notes (correctly) that the Department attempted to initiate the wage offset without first giving him a chance to show hardship. 34 C.F.R. § 31.3(a)(11). He ignores the fact that the Department subsequently stayed the offset request, and forwarded his file to a hearing officer for an independent written review on the question of hardship. The hearing officer ruled that the Department could initiate the offset, as it would not cause Sibley extreme hardship.
 
 
 3
 Upon being informed of this result, Sibley again protested, this time through a letter from an attorney from his union, the National Treasury Employees Union. The letter noted (again, correctly) that Sibley had sought only an internal hardship consideration, rather than a written hearing,[1] and that the Department had never notified Sibley of his right to an additional oral hearing before an independent official. 34 C.F.R. § 31.7. Again, the Department stayed the offset request, and formally informed Sibley of his right to an oral hearing. Sibley requested an oral hearing, but asked that it be delayed until he had also received a regional review. In an exchange of letters concerning the regional review, the Department informed Sibley that if the regional review ruled in Sibley's favor, it assumed he would not want an independent oral hearing. When Sibley indicated he would not waive his right to an oral hearing even if the regional review were in his favor, the Department apparently abandoned the regional review as pointless, and referred his case to an Administrative Law Judge at the MSPB, which handles independent oral hearings for the Department. The Department informed Sibley by letter that it was referring his case to its Office of General Counsel, but did not make clear that this was for the purpose of conducting an oral hearing, in lieu of the regional review.
 
 
 4
 Sibley first learned of the oral hearing when the ALJ sent him a letter, dated November 16, 1994, informing him that she intended to hold a telephonic hearing on December 7, apprising him of the format of the hearing and the documents required, and asking for a list of witnesses, and a telephone number where he could be reached. Sibley expressed his confusion at the fact that a hearing was being held at all, and requested a month's delay, a hearing in person rather than by telephone, as well as other information from the ALJ. He did not supply a list of witnesses, or a telephone number. The ALJ granted a five-day delay, but ruled that Sibley had not shown the need for a hearing in person. She referred Sibley to the federal regulations which governed the hearing, told him he need not re-submit documents which he had already submitted to the Department, and reminded him that evidence must be supported by documentation rather than personal assertion, but informed him he would have to decide for himself whether further documentation would be helpful to his case. Sibley flatly refused to participate in the telephonic hearing, claiming that it violated his right to a face-to-face hearing. He also asked for a different hearing officer on grounds that the ALJ's refusal to grant a one-month continuance, and give him more information about the hearing, was arbitrary and capricious. The ALJ, however, proceeded with the hearing, ruling solely on Sibley's written submissions. She found that the offset would not cause Sibley undue hardship.
 
 
 5
 The communications which Sibley received from the Department were not models of clarity. But even assuming that the Department violated its internal procedures, as Sibley alleged, that does not mean that Sibley was denied due process in a Constitutional sense. The Department corrected its premature attempts to offset Sibley's wages, adequately informed Sibley of his rights, and gave him ample time to respond. And while the Department should have told Sibley explicitly that it intended to abandon the regional review in favor of an independent oral hearing, Sibley received adequate notice of the hearing and its format from the ALJ. In response to his protests that he had too little time to prepare, the Department accurately counters that Sibley was hardly unaware of the issues involved, since the Department and its predecessor in interest, the Illinois State Scholarship Commission, had been trying to collect the debt for over a decade. And in particular, Sibley's wilful refusal to participate in the hearing before the ALJ undercuts his due process argument. There is no intrinsic right to a face-to-face hearing, 34 C.F.R. § 31.8(d)(3)(i), (iii); the ALJ gave him adequate information about the format of the hearing; and it would have been improper for her to have informed him before the hearing of the adequacy of the documentation for his case, other than pointing out the appropriate regulations. Having arbitrarily refused to participate, Sibley cannot now complain that he is bound by the tribunal's decision. He has received all the process due to him.
 
 
 6
 Sibley also argues that the Salary Offset Statute, 5 U.S.C. § 5514, violates his rights under the Equal Protection Clause of the Fourteenth Amendment, because it singles out federal employees for special treatment (wage garnishment). Federal employees are not a protected class within the meaning of the Equal Protection Clause. Accordingly, we review the statute only to determine if the classification "bear[s] some rational relationship to legitimate governmental ends." Hager v. City of West Peoria, 84 F.3d 864, 872 (7th Cir.1996) (internal quotation omitted); Federal Communications Commission v. Beach Communications, Inc., 508 U.S. 307, 313 (1993). It does. A wage offset makes perfect sense where the federal government is both paying a salary to, and attempting to collect a debt from, one of its own employees. Accordingly, there is no violation of the Equal Protection Clause.
 
 
 7
 Sibley next claims that the doctrine of laches bars the Department from collecting on the loan. Laches may apply to the federal government in some instances where it has acquired a cause of action through subrogation, and is acting in a proprietary rather than sovereign capacity. United States v. California, 113 S.Ct. 1784, 1790-91 (1993); United States v. Peoples Household Furnishings, 75 F.3d 252, 255-56 (6th Cir.1996). We need not decide whether laches applies in case, however, because Sibley never raised the defense in any of the administrative proceedings. This failure to exhaust administrative remedies waives his right to federal judicial review. Ayrault v. Pena, 60 F.3d 346, 349 (7th Cir.1995). Sibley's contention that it was not possible to raise the defense of laches before an administrative tribunal is simply wrong. Administrative tribunals, including the MSPB, are perfectly competent to entertain a defense of laches. See, e.g., Nuss v. Office of Personnel Management, 974 F.2d 1316, 1317 (Fed.Cir.1992).
 
 
 8
 Finally, Sibley contends that the provision of the Higher Education Act which removed the statute of limitations for initiating a wage offset, 28 U.S.C. § 1019A(a)(2), subjects him to involuntary servitude within the meaning of the Thirteenth Amendment. This argument requires no discussion other than an observation that it is without merit.
 
 
 9
 AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Therefore, the appeal is submitted on the briefs and the record. See Fed.R.App.P. 34(a); Cir.R. 34(f)
 
 
 [1]
 The Department, however, explicitly told Sibley that it intended to forward his file to an independent hearing officer. Sibley did not protest this action until after the hearing had taken place